

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>Juan HERNANDEZ-Rojas,<br><br>  Defendant. | Magistrate Case No.: '07 MJ 8801<br><br>COMPLAINT FOR VIOLATION OF<br><br>21 U.S.C. § 952 and 960<br>Importation of a Controlled<br>Substance (Felony) |

The undersigned complainant being duly sworn states:

COUNT ONE

That on or about September 19, 2007, within the Southern District of California, defendant Juan HERNANDEZ-Rojas, did knowingly and intentionally import approximately 4.94 kilograms (10.87 pounds) of methamphetamine, a Schedule II Controlled Substance, into the United States from a place outside thereof, in violation of Title 21, United States Code, Section 952 and 960.

//
//
//
//
//
//

## COUNT TWO

That on or about September 19, 2007, within the Southern District of California defendant Juan HERNANDEZ-Rojas, did knowingly and intentionally import approximately 11.48 kilograms (25.26 pounds) of cocaine, a Schedule II Controlled Substance into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 952 and 960.

The complainant states that this complaint is based on the attached Statement of Facts incorporated herein by reference.

Vincent McDonald Special Agent
U.S. Immigration & Customs Enforcement

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 20th DAY OF SEPTEMBER 2007.

Pete C. Lewis
UNITED STATES MAGISTRATE JUDGE

UNITED STATES OF AMERICA
   v.
Juan HERNANDEZ-Rojas

## STATEMENT OF FACTS

This complaint is based on the reports, documents, and notes furnished to U. S. Immigration and Customs Enforcement Special Agent (S/A) Vincent McDonald.

On September 19, 2007, at approximately 1922 hours, Juan HERNANDEZ-Rojas entered the United States from the Republic of Mexico via the Calexico, CA West Port of Entry. HERNANDEZ was the sole occupant and driver of a 2006 Toyota Corolla.

Customs & Border Protection Officer (CBPO) J.R. Bustamante in primary inspection lane #4 began his inspection of HERNANDEZ by asking him to present a valid entry document. As HERNANDEZ stopped the Toyota Corolla at the inspection booth to comply, CBPO J.R. Bustamante witnessed CBPO J. Jones and his canine conducting pre-primary inspections in the immediate area. CBPO J. Jones' informed CBPO J.R. Bustamante that his canine alerted to the 2006 Toyota Corolla. CBPO J.R. Bustamante instructed HERNANDEZ to turn off the vehicle and provide him the keys. CBPO J.R. Bustamante obtained a negative Customs declaration from HERNANDEZ and a valid legal permanent resident card. HERNANDEZ was escorted from the vehicle to the vehicle secondary (VS) area.

In the VS area, CBPO J.M. Carp approached HERNANDEZ and asked him where he was going and if he was the owner of the Toyota Corolla. HERNANDEZ stated that he had owned the Toyota Corolla for approximately six months and he was going to his friend's house in Calexico, California. CBPO J.M. Carp continued to inspect the Toyota Corolla and discovered black spray paint on the bolts that connect the front seats.

Further inspection by CBPO J.M. Carp revealed access panels on both rocker panels of the vehicle. The passenger side access was opened and ten packages with a net weight of 4.94 kilograms (10.87 pounds) wrapped in clear cellophane were extracted. CBPO J.M. Carp selected a random package, it was probed and field-tested positive for methamphetamine.

CBPO J.M. Carp continued his inspection of the Toyota Corolla and opened the access panel on the driver's side of the vehicle. CBPO J.M. Carp stated the packages on the opposite side of the vehicle were shaped differently. A total of ten packages with a net weight of 11.48 kilograms (25.26 pounds) wrapped in clear cellophane and powdered soap were extracted. CBPO J.M. Carp selected a random package from the driver's side, it was probed and field-tested positive for cocaine.

HERNANDEZ was placed under arrest and advised of his rights per Miranda, which he acknowledged and waived, agreeing to answer questions without the presence of an attorney. HERNANDEZ stated he knew narcotics were in the vehicle but he did not know what kind. HERNANDEZ added he was to be paid $1,500.00 to cross the vehicle into the U.S., at which time he would wait for a contact to call him on a cellular telephone. HERNANDEZ continued in stating upon contact by phone he was to drive the Toyota Corolla to "Nosotrous Park" and an unidentified person would obtain the car to unload the narcotics.